This is number 23-10841 William Martin v. Mauricio Duran et al. Mr. Vossler. Morning your honors. May it please the court. Morning. Assistant County Attorney Zach Vossler on behalf of the defendants, Miami-Dade Police Lieutenant Mauricio Duran and Officer Bridget Doyle. This court has previously affirmed the dismissal of 1983 claims where the complaint was quote plagued not by what it lacks but by what it contained. Here the district court erred when it ruled that what the Martin brothers complaint contained did not entitle the officers to qualified immunity. This is what the complaint contained. The brothers were wearing dark observation that he saw them looking into cars that were parked in the police station parking lot. Let me stop you right there. You are not, I think, taking the complaint in the light most favorable to the plaintiffs. The complaint alleges at one point that what how in light of cases like Saunders you can rely on what Officer Duran stated in that report to lay out the factual narrative that we're required to review. Well your honor for first the plaintiffs only alleged that what was in the arrest report was false or misleading was in the malicious prosecution count. It doesn't matter. But they don't allege any facts. If it was false for that count it's false for everything else. Something that's false doesn't become true for some other purpose. The issue with Saunders was that the plaintiff had included additional information that was not in the police report. But again it goes into the point that there is a disputed issue of material fact which is your client says and the district court found or determined that there was a disputed issue of fact about Duran's arrest affidavit claimed he observed plaintiffs walking slowly through a closed government complex parking lot looking into the police and county cars. And then when you watch the video, the body cam of the other officer, there's clearly no parking lot that is in any way shape or form has any cars there. They're in an empty lot. But in addition to that, again as Judge Jordan pointed out, the complaint says that the incident report is false. So how can that be taken in light most favorable to the plaintiff? At the moment that the stop occurred on the body cam video, yes they are in an area of the parking lot where there were no cars. But we see in the video that there are cars in the parking lot where they're walking towards. There's barely any cars in there. And how do you even have a reasonable suspicion at that point? If his suspicion was that the plaintiffs were allegedly looking into cars and then they leave the parking lot where these cars are, what is the criminal activity? What is the basis for the stop? At that point we're no longer looking in the cars, but from the video it's clear that they are walking in a direction where there are additional cars parked. Where they're saying it's their car. They don't say where their car is parked. When the officers ask them. They say it's their car. They're walking to their car. There are multiple cars in the parking lot. Okay, so the police officer instead decides to tackle him instead of letting him walk to his car. The police officer only tackled Michael at the point where Michael stopped walking in the direction he'd been walking for the entirety of the video. Turned his body toward Lieutenant Duran. Raised his finger and pointed at the lieutenant and said, yo if you touch him again. At that point Lieutenant Duran was not required to wait to see what the rest of that sentence was before he acted to arrest Michael. Do you have, without the incident report, did the officers have reasonable suspicion? If the incident report is taken out and all of the quotes are taken out from the incident report and all that it's left. You don't consider the incident report? Right, so if all that's left in the complaint is we were standing in a parking lot and this officer came up and there would be no reasonable suspicion for that stop. And no arguable reasonable suspicion either? Again, if all that there was was we're standing in this parking lot. We're not standing, we're walking through the parking lot with hoodies, with backpacks on, in a lit parking lot and we were walking toward our car. That's all you have? If that's all there is then we would concede that there would be no arguable reasonable suspicion there. Okay. But at some point the Terry stop turned into an arrest and as I mentioned to Judge Lagoa, it was at the point where Lieutenant Duran reasonably believed, reasonably could have believed, that Michael was threatening him. And at that point he did not need to wait before arresting him for assault. And then while he is wrestling on the ground. To arrest him for assault? I believe it's the officer who assaulted him, not the other way around. Because all he did was say, don't touch me. No, that's William. William was the brother whose arm Lieutenant Duran was grabbing. Michael was the other brother walking on the left, who was the one that then turned towards the officer and said, yo, if you touch him again. Who was the one that was tased? That was William. And what was the basis for tasing him when he was just standing there and saying, don't touch my brother? He was not standing saying, don't touch my brother. The body cam video shows that he was, while Lieutenant Duran was grappling with Michael on the ground, William was coming up behind Lieutenant Duran while he was telling him to get off his brother. When Officer Doyle came up behind William to get him away from her colleague, William turned around and pushed Officer Doyle. And then at that point, Officer Doyle unholstered her taser, pointed it at William, told him to back up twice. And then after he did, instead of backing up, Michael then leaned over again towards the lieutenant, who could not see him. And that's the point when Officer Doyle deployed her taser against William. How do you square the cases that sort of seemed to land on different sides of the case you cite that indicates that even if there's an initial improper stop or seizure, that does not automatically make unconstitutional a subsequent use of force? And the cases that say that whether there's an illegal stop without reasonable suspicion or probable cause, anything that happens afterward, including use of force, gets wrapped up into that and becomes potentially illegal too. How do you square those cases? What's the thread that makes those cases harmonizable? Because they seem to be in tension with each other. One case says, if your initial stop and arrest was illegal, force used after that arrest is also excessive as a matter of law. And then you cite one of our cases that involved a stop at a house without letting someone get out. And despite that initial improper stop or seizure, the court nevertheless analyzes the use of force separately. I'm trying to figure out how to make sense of those cases. So I cited Morris, which was the case you were talking about that took place at the house, for the proposition that the arrest is lawful. But in terms of the force, this court held in Beshear that if the arrest is unlawful, then excessive force does get wrapped in. It is not a separate claim. And that's the argument that we raised that the district court aired when it cited those cases, but then said that because the arrest was unlawful, then there is a discrete excessive force claim. But what Morris said was, regardless of what happened prior to an offense, that there can be probable cause to arrest. So in Morris, the officer was trying to get into a plaintiff's house, which this court said he was not permitted to do. There was no reason for him constitutionally to enter the plaintiff's house without consent. The plaintiff tried to close the door on the officer. The officer pushed the plaintiff. And then the plaintiff punched the And this court upheld the constitutionality of the arrest, because regardless of what happened before with the officer unlawfully trying to enter the plaintiff's house, once the plaintiff punched the officer, he committed an offense. Or there was at least probable cause for the officer to believe that the plaintiff had committed an offense. Can you, in the brief time that you have, can you shift over to the malicious prosecution claim? Yes. So in Kingsland, this court explained that to state a claim for malicious prosecution, a plaintiff needs to state that they suffered a seizure pursuant to legal process. Seizure pursuant to legal process means an arrest with a warrant, which did not happen here, or a seizure following an arraignment, indictment, or probable cause hearing. Those did not happen here either. The plaintiffs don't allege that that took place. In Nieves, the Supreme Court discussed that we should not be looking at modern tort law when deciding malicious prosecution claims, only what was well-established at the time of the enactment of Section 1983. Since Nieves, this court in decisions- But what was the state of the common law in the 1870s with regards to whether or not you needed that sort of a seizure? There still needed to be a seizure with legal process. As a matter of common law in 1870, 1871? As far as I believe, yes. That's what Nieves requires us to look at, right? Yes. Nieves says you need to look at malicious prosecution as it existed as a common law tort at the time 1983 was enacted. So post Nieves, then this court in 2022 in Luke versus Gulley, when they distilled the malicious prosecution down to two claims, and now it is all the plaintiff needs to allege that a criminal prosecution terminated in his favor and that he suffered a seizure pursuant to legal process. And Luke re-emphasized that a seizure pursuant to legal process is with a warrant or following an arraignment, indictment, or probable cause hearing. And the- Here, there was no arraignment? There was no seizure following the arraignment. So in Kingsland, the plaintiff was arraigned or indicted, and she was required to travel from New Jersey to Florida twice to defend her case. She was required to pay a $1,000 bond, but this court held that that was not a seizure pursuant to legal process and that she was not seized by requiring, by being required to do that. And your view is that the only way this could have satisfied that seizure requirement of the constitutional tort of malicious prosecution was if he had been held in custody without bond following arraignment? If they had been held in custody without bond or, as Kingsland suggested, things along the lines of a restriction on interstate travel would also be a seizure. Well, it would have also been if he'd been arraigned and required to go to the jail and make bond. That still would have been a seizure. I disagree, Your Honor, because in Kingsland, the plaintiff was also- Suppose he was there for, but the Kingsland plaintiff had to come, but she didn't have to go to the jail and be booked in the jail and then obtain a bond. But maybe I'm misunderstanding Kingsland. As far as I remember, the plaintiff there did have to post a $1,000 bond. No, but there's nothing in that case that says there's one thing to post to be allowed to do that as opposed to having to be booked in the jail, go through that process, be in a cell until you make a bond. That's a different process. Wouldn't that be enough? I don't agree because then at that point, every false arrest claim where the plaintiff is detained for any amount of time in a jail would then also entitle them to a malicious prosecution claim. No, it wouldn't because you'd have to- just the police officer here made the arrest. It was a warrantless arrest. What we've got is a warrantless arrest, right? Correct. Okay. So, we're talking about being seized and they were seized there, correct? In the warrantless arrest, they were seized? Correct. All right. So, that's done. That's the false arrest. We're talking about malicious prosecution and wouldn't it be enough if then they get an indictment or they get an information or whatever? They have to make those charges. They have to file them some way.  An information? For something like this, it would be an information. It would be an information. There were misdemeanors. There were informations but they didn't have to go to jail or anything. They just posted a bond or whatever they did. What did they do? Do you know? No, that's not stated in the complaint. Okay. But there's no allegation of a seizure post-information is what your argument needs to be? That is our argument, Your Honor, that there was no seizure following the arraignment. Thank you. All right. Thank you very much. Mr. Lett. May it please the court. Ariel Lett on behalf of the appellees, Michael and William Martin. Your Honor, this case is about two black men who were brothers, both in the figurative and literal sense, who were racially profiled, unconstitutionally stopped and violently arrested by the officers, the appellants in this case. Those officers then knowingly made false statements in an arrest affidavit to retroactively provide and justify reasonable suspicion and probable cause. And that's alleged in your complaint. And we're here on a rule 12b6 motion. Yes, Your Honor. And the district court properly denied the appellant's motion to dismiss for qualified immunity for three reasons. The appellees plausibly alleged that the appellants, one, lacked reasonable suspicion and probable cause for the arrest. Two, violated clearly established right to be free from false arrests, malicious prosecution and excessive force. And three, used excessive force regardless of whether they had probable cause. Regarding the reasonable suspicion argument, the facts are, as alleged in the complaint, the facts are what we say they are at this stage procedurally. That one, the officers- Lied about seeing them looking at cars in the parking lot. I think that's an easy part of your case. That's correct, Your Honor. The light is most favorable to you. There's no even arguable suspicion if you accept the plaintiff's version that they didn't look in the cars and they were lying in the incident report. That's correct, Your Honor. We're going to try to move you from the false arrest to the question Judge Jordan asked, opposing counsel, because I think that's, a false arrest is easy. The next one is hard and the next one is even harder. So the next one is, and once there's a false arrest, obviously if it's a false arrest, you can't use any force. So you would always have an excessive force claim. Do you see what I mean? Yes, Your Honor. But the question under the legal question is, is that claim then subsumed in the false arrest? I don't really need to analyze the tussle and who did what, whether the second officer had a reasonable basis for the taser or not. If the excessive force claim is subsumed and you just make a false arrest claim, you can argue to the jury and look how they hit us and did all this afterwards, because they had no basis to do it. So you don't need an excessive force claim. Do you see what I mean? I understand your point, Your Honor. That's why it gets subsumed, because if you got a false arrest like this under your facts, you can't use any force. Okay, so it doesn't get into who did what when and whether it was justified. So why is that not? Now you can get damages on that force in your false arrest, but I don't think you have a separate cognizable excessive force claim. Now tell me why I'm wrong. Because they're plotting the alternative. At this procedural posture, plaintiffs are allowed to make different types of claims. So a jury, if we presented the facts of this case to a jury and it made it to that point, could analyze in their deliberations whether there was actual false arrest. They could say the officers weren't lying. There was a reasonable suspicion. They could determine that there was reasonable suspicion and or probable cause to make the arrest. But that the force was excessive. But that the force was excessive, Your Honor. They were detained. Okay, so we would need to examine it under that theory. We need to look at both no reasonable suspicion. So you say, all right, we should also have a separate part of the opinion that says, okay, let's assume there was reason to stop. Assume arguable probable cause. Was this force excessive? Okay, so we would have to address that under the alternative set of facts. This court could address that under the alternative set of facts if the court felt that it was appropriate to address it separately. However, again, what we do believe is that if the court, again, found that it was subsumed in a false arrest claim, we would agree that there would be no excessive force claim. Okay, so let's go to there was reasonable suspicion, arguable probable cause, then help me with this. The takedown's one thing. Let's put that aside. It seems to me when that second officer comes that there is, he says, an allegation of a push. Does your client deny that he lunged at the officer, Doyle, or whatever her name was? Wasn't there some forward movement before she used the taser? We don't agree, Your Honor, at this point. What is the record? What are the allegations about? The allegations is not that they ever used any intentional or physical contact with the officers. In looking in the light most favorable to the plaintiffs, there has to be an assessment of intent. But you also, you don't take issue with using the body cam footage in analyzing your complaint and the motion to dismiss because you say that it is accurate in what it depicts. Is that right? Well, the law, Guy, the court stated that you can only credit the video where the video blatantly contradicts the plaintiff's facts. That is the only point you can technically credit. I don't know about that. But the district court judge dropped a footnote saying that the court takes judicial notice of the contents of defendant Doyle's body camera footage to which plaintiffs do not object and to which they refer to in their amended complaint. Obviously, you refer to that in your amended complaint and it's like having an exhibit attached to the complaint so you can refer to it. We did not attach the video to the complaint, but we did refer to it. It was the appellants who attached the video to it. But your description in the complaint is based on the video. It substantially matches and that was what the next point I was getting to is that this video does not blatantly contradict our facts and instead strongly supports the fact that the plaintiffs were non-violent during this entire encounter. Right, so just to put a button on the whole thing, you agree, as you say in your brief, that we can, unlike the incident report and the arrest affidavit, we can look at the video to help us figure out, in conjunction with your allegations, the sequence of events once the body cam footage was turned on? Absolutely, Your Honor. And if the court were to look at the video versus the allegations, they're quite striking. The arrest affidavit states that Michael punched Officer Duran twice before ever being tackled to the ground. The video shows that that's a very different thing. He immediately tackled him while he had a big jug of water in his hands. It then says that William punched Officer Duran in the back of the head multiple times while he was on the ground. The video shows that entire incident while William was over Officer Duran and Michael. There's not one punch thrown, not a single punch thrown. Deal with the second brother in the taser. What is the video? Yes, that's... What does it show? That's William standing over him with his palms out, pleading for him to get off of his brother, saying that they did nothing wrong, showing that their car was right there, showing them the keys. And at that point, that's when he was tased. And this court in Fills versus City of Aventura definitely agreed that when you tase a suspect who had their hands up, who was suspected of a minor nonviolent misdemeanor and was not fleeing at the time, was excessive. Because as the court knows, the forced use must be reasonably proportionate. How about using the rest of your time on the malicious prosecution? Yes, Your Honor. And with focus on the seizure element. Yes, Your Honor. So my opposing counsel definitely cites to Kingsland. However, we don't believe that that's the appropriate standard. And in Scott versus City of Atlanta, which was a 2007 case, it instead turns on the constitutionality of a warrantless arrest that occurred before the arraignment or the indictment. And so we believe that at that time of the warrantless arrest, and if it was arrest without reasonable suspicion, without probable cause, without arguable probable cause, that the accrual of damages at that point would start at that point of that seizure. His point is that you need seizure pursuant to a formal process. And that's the way the county and the defendants distinguish false arrest from malicious prosecution, that although they can both stem from an illegal stop, arrest, seizure, etc., you need some formal detention or seizure pursuant to legal process, warrant or incarceration or custody after arraignment for there to be malicious prosecution. What is your response to that? Well, my response is that we, although there must be an actual indictment, and we can agree that there could be an actual indictment that, or a... But there wasn't an indictment. Or information, yes, information that... Here, there was just an information. Yes, there was an information. No indictment. Correct, correct. And it can be an information or an indictment. In this case, it was an information. And while that is a necessary, I believe, requirement for the malicious prosecution case, we do not need to show that they were then subsequently, again, seized, and that the damages are only within, only start at the subsequent... You're saying the information itself is a sufficient seizure? In the state of Florida, information is an indictment. State of Florida doesn't have indictments. They charge by information. Right, yeah, absolutely. You cited a case, Scott versus City of Atlanta, a couple of minutes ago? Yes. I don't see it in your brief. Could you give me the citation for it? Yes, I can. At least it's not listed in your table of citations. It is brief, Your Honor. I apologize. I can't find the citation, but it is briefed in our briefing, Your Honor. I apologize. In the district court? Yes, in the district court. It's called Scott versus City of Atlanta? Scott, S-K-O-P. Oh, S-K-O-P, Scott versus City of Atlanta. I wrote Scott versus City of Atlanta. My apologies. The lady at her driveway, and the cop won't let her go in her own driveway. Okay, and you said it was a 2007 decision? She's trying to go down her driveway, and the utility line's down, and it's right there, and they won't let her go in her own driveway. He said, no, no, no. She said, that's my driveway. The line's way over there, and they won't let her go. And then they ended up arresting her and beating her up. It was a mess. You had everything. She had a really good case. I don't know about your case. Do you say that that Scott case is one of our cases from 2007? 2007, yes. Okay, we'll find it. Thank you. Now, I do want to address a point that Judge Jordan mentioned in asking my colleague to square the Morris case versus all other cases necessarily saying that if there's no probable cause in the force, arrest is unconstitutional, any force is unconstitutional. And our case is very different from Morris. In Morris, obviously, there was an unconstitutional act by that officer when the officer decided to illegally enter the home. However, that case, as your honors noted, there was a great amount of force used when that individual punched an officer. There here, there was no punch, and there was no intent to commit any act here. And as you know, whether or not there's intent is a very factual dispute in which we're not even at that point, your honor, based on the procedural posture of this case. The, instead, the facts here show, unfortunately, a very aggressive and excessive acts of these police officers and racially profiling these two black gentlemen. Now, I agree, police are needed in this country. I'm not anti-police. I wouldn't pose that this panel is any anti-police. We need police. But what we need, what we must demand are honest, effective, non-biased police officers. Unfortunately, for Michael and William, that's not the type of police officers that they encountered on that day. Well, we, we take, we have to take all of the allegations in your complaint as true. Absolutely. And if you succeed on, on appeal, and the defendants lose, then it'll be your burden to prove those things to a jury. Absolutely. We are confident in that burden. We're not going to take, we don't, at this stage of the proceedings, we don't make any determination about whose version of facts is right or, or wrong. We accept yours because we're at the 12B6 stage. Yes, your honor. Absolutely. And I thank you for, for that. I, I see my time is up. Thank you. Thank you very much, Mr. Lett. Your honors, I'd first like to address, because we've spent so far all of this morning talking about whether the plaintiffs have stated that the officers violated their constitutional rights. But I would be remiss if I did not mention that their burden to overcome qualified immunity is too pronged. They can't, you can't make that argument now. Okay. Well, we made it in our brief. No, no. It's preserved in the brief. Okay. But the problem is that if you make that argument now in your rebuttal, Mr. Lett has no opportunity to address it in his comments to us. But you've made the argument in the brief that the district court erred on the clearly established prong as well. And that argument is one we'll have to take up. All right. Well, on the excessive force claim, while a plaintiff can plead in the alternative, this complaint does not plead in the alternative. The excessive force claim does not say, even if the arrest was lawful, the force used was excessive. You don't have to do that in a complaint. You don't have to use those magic words. You can always plead alternatively, at least at the 12B6 stage. Do you know of any cases that say you have to use those words in the alternative? I don't know of any cases that they have to use in the alternative, but the plaintiffs never alleged that there is a scenario where the arrest could have been lawful. Yes, but the jury can reject that proposition. As Judge Legault and Judge Hall have suggested, one possible outcome of this case, if it goes to trial, is that the jury rejects the false arrest claim, maybe because they think that the officers were not lying on the incident report and arrest affidavit, but then say the use of force was excessive. And you can have an excessive force claim with a lawful arrest. So, it's not completely unimaginable that a jury could splice a case that way. We don't know what the facts are. We're not here to predict one way or another, but it's not inconceivable, I don't think. Maybe you think differently. I mean, I do, but Your Honor makes a salient point. But again, we're here on a motion to dismiss and plaintiffs are allowed to plead alternative theories, and that's what it is. Yes, but I guess my point is that this court can rule based on the allegations in the complaint and based on what is in the video, that the plaintiffs have failed to state a claim for false arrest. And if they have failed to state a claim for false arrest, then the excessive force claim would, it would also fail to state the claim for excessive force. Those two things don't follow. You can lose on one, not lose on the other. And the existence of one helps the other, but they're not necessarily dependent on each other. You can have one without. For example, you could find that the arrest, a jury could conversely find that the arrest was unlawful, right? But could find, if they reject the plaintiff's version of events after that, that the use of circumstances, and so then they could recover for the false arrest, but not recover for the excessive force. So that's maybe for a jury to figure out at some other point. So, okay, Mr. Vosper, thank you very much. Mr. Lead, thank you very much as well.